**William L. MONDY, Appellant,**

v.

**SECRETARY OF THE ARMY, Appellee.**

No. 86–5644.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1987.

Decided April 26, 1988.

**1052**

Eugene R. Fidell, with whom, Mary S. Pence, Washington, D.C., was on the brief, for appellant.

Jeffrey Hunter Moon, Asst. U.S. Atty., with whom, Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee. Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before BUCKLEY and WILLIAMS, Circuit Judges, and MacKINNON, Senior Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

Concurring Opinion filed by Senior Judge MacKINNON.

WILLIAMS, Circuit Judge:

Appellant William Mondy brought suit *in forma pauperis* alleging that his dismissal from his post at Walter Reed Army Medical Center was racially discriminatory in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982) (the "Act"). As the parties present the case, there were two procedural defects in the bringing of the suit: (1) Mondy's complaint named the wrong defendant—his activity commander, Colonel Thomas Sweeney, rather than the Secretary of the Army;[1] (2) the United States marshals, who pursuant to 28 U.S.C. § 1915 (1982) issue and serve process for *in forma pauperis* plaintiffs, delayed service for nearly four months, long past § 2000e–16(c)'s 30-day deadline. (The time runs from the date of plaintiff's receipt of notice of final action on his claim. Here the letter was delivered to Mondy's address on September 23, 1985, which is deemed the date of receipt; this made October 24, 1985 the deadline. Mondy filed his papers with the court about 9:30 A.M. on October 18, 1985, and the

---

**1.** Under 42 U.S.C. § 2000e–16(c), the only proper defendant is "the head of the department, agency, or unit, as appropriate." As noted by the Seventh Circuit, "[t]his cryptic phrase provides little guidance to litigants." *Paulk v. Department of the Air Force,* 830 F.2d 79, 80 (7th Cir.1987). Because the statutory language is so unenlightening, we strongly endorse the suggestion made by the Third Circuit in *Williams v. Army & Air Force Exchange Service,* 830 F.2d 27, 31 (3d Cir.1987), that federal agencies amend their right-to-sue letters to indicate who should be named defendant. In this case, Mondy does not dispute appellee's contention that he ought to have named the Secretary of the Army. Thus for purposes of this opinion we will proceed on the assumption that Mondy erred in naming Colonel Sweeney. However, as the question is not now before us, we do not reach or purport to decide the question of who may be a proper Title VII defendant under § 2000e–16(c).

marshals did not serve the United States Attorney until February 14, 1986.)[2]

Because of the provisions of the Federal Rules of Civil Procedure on amendment of complaints and on service of the government and its agents and officers, an error in naming the proper defendant would not be enough, standing alone, to defeat Mondy's claim. Rule 15(c)[3] allows a pleading amendment, correcting the identity of the party charged, to "relate back" to the date of the initial pleading if the *correct* party received adequate notice as defined by the rule. (*Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), makes clear that this notice must have been received within the original time limit.) The rule specifies that when suit is brought against an agent or officer of the United States, service on the United States Attorney, his or her designee, or the Attorney General, satisfies these notice requirements. Rule 4(d)(5), in turn, explains that

one serves an agent or officer of the United States by "serving the United States"; Rule 4(d)(4) makes clear that one does so by serving the United States Attorney (or his or her designee) and the Attorney General.[4]

While Mondy may have mistakenly believed that Colonel Sweeney was the proper Title VII defendant, he used his military title in the complaint and thus clearly recognized him as an officer or agent of the United States. Had he been effecting service himself, that recognition would have led him to Rule 4(d)(5) and thence to Rule 4(d)(4). Service thereunder would have more than satisfied Rule 15(c)'s prerequisites for relation back. His mistaken choice of defendant would thus have been curable.

Mondy was, however, proceeding *in forma pauperis*. As such, he lawfully relied upon the marshal's office to effect service.

---

**2.** The district court practice is to defer service of *in forma pauperis* complaints until the plaintiff's motion to proceed *in forma pauperis* is granted. Here the extreme delay arose out of the fact that when the screening district judge granted the *in forma pauperis* motion, he simultaneously dismissed the case *sua sponte*. Plaintiff moved to alter that judgment, and on February 10, 1986 the district court agreed and reinstated the case; service by the marshals followed promptly.

**3.** Rule 15(c) provides as follows:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The delivery or mailing of process to the United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if

named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

**4.** Rule 4(d)(4) & (5) provide as follows:

(d) Summons and Complaint: Person to be Served. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

\* \* \* \* \* \*

(4) Upon the United States, by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency.

(5) Upon an officer or agency of the United States, by serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency. If the agency is a corporation the copy shall be delivered as provided in paragraph (3) of this subdivision of this rule.

His original complaint made clear his intent to sue a federal officer. It named Colonel Sweeney as defendant and specified his address as "United States Army, Institute of Dental Research, Walter Reed Army Medical Center." The marshal's office so understood the complaint; it delivered a copy to the U.S. Attorney on February 14. If it had completed this service by the October 24 deadline, Mondy would have been able to amend his complaint pursuant to Rule 15(c). Had it not been coupled with the marshal's delay, Mondy's error would have been readily and fully correctable.

On May 14, 1987, plaintiff, by then represented by counsel, took the appropriate step to mend the original error—he filed an amended complaint naming the Secretary of the Army as defendant. (The marshal delivered a copy to the United States Attorney's office the next day.) The Army moved to dismiss for want of subject matter jurisdiction, on the ground that plaintiff's failure to meet the 30-day limit of 42 U.S.C. § 2000e–16(c) defeated the court's jurisdiction.

The district court found that as the *amended complaint* had not been served on any proper party defendant within 42 U.S.C. § 2000e–16(c)'s 30-day period, the plaintiff had failed to meet the requirements of Rule 15(c), as clarified in *Schiavone v. Fortune.* And because the court believed that the time limit was jurisdictional (*i.e.,* not subject to equitable tolling for any reason) under this court's opinion in *Hofer v. Campbell,* 581 F.2d 975 (D.C. Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979), it granted the motion to dismiss. Because we believe that § 2000e–16(c) is subject to equitable tolling, and that this case calls for application of the doctrine, we reverse and remand.

## I. Availability of Equitable Estoppel

The Supreme Court has not yet considered whether § 2000e–16(c)'s 30-day limit is a jurisdictional requirement or is, instead, a statute of limitations subject to equitable estoppel. The question is one of first impression in this court.[5] However, in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that the analogous 90-day (now 180-day) time limit for filing a Title VII claim against a private employer with the Equal Employment Opportunity Commission ("EEOC") was not jurisdictional and was, "like a statute of limitations, ... subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132. The Court based its decision upon (1) Congress's having expressed the time limit in a provision (42 U.S.C. § 2000e–5(e)) entirely separate from the one that defines the jurisdiction of the courts (§ 2000e–5(f)), 455 U.S. at 394–95, 102 S.Ct. at 1133; (2) legislative history, *id.* at 394–95, 102 S.Ct. at 1133; (3) prior cases reflecting an assumption that the filing requirement was not jurisdictional, *id.* at 397–98, 102 S.Ct. at 1134–35; and (4) Title VII's remedial purpose, *id.* at 398, 102 S.Ct. at 1135.

The circuit courts have extended *Zipes* to § 2000e–5(f)(1)'s 90-day limit for filing Title VII claims in district court against pri-

---

**5.** Since 1978, various panels have fought a footnote war over whether this court held the § 2000e–16(c) 30-day limit to be jurisdictional in *Hofer v. Campbell,* 581 F.2d 975 (D.C.Cir. 1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979). *See, e.g., King v. Dole,* 782 F.2d 274, 277 n. 3, (D.C.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 194, 93 L.Ed.2d 126 (1986) (*Hofer* held the 30-day limit for filing claims in district court jurisdictional); *Bethel v. Jefferson,* 589 F.2d 631, 641 n. 64 (D.C.Cir.1978) (describing *Hofer's* "jurisdictional" language as dictum); *Loe v. Heckler,* 768 F.2d 409, 419 n. 20 (D.C.Cir.1985) (commenting that the 30-day time limit issue is an open question). In *Hofer* there was no issue of waiver, estoppel or equitable tolling, and there was therefore no need for the court to decide whether the 30-day time limit was jurisdictional and its observation on the subject was dictum. Because the dictum was itself based upon earlier dictum in *Richardson v. Wiley,* 569 F.2d 140 (D.C.Cir.1977), and the court provided no independent reasoning on the topic, the case has no effect on the matter at hand.

The majority of the other circuits that have ruled on the issue have found the time limit to be non-jurisdictional. *See, e.g., Milam v. United States Postal Service,* 674 F.2d 860, 862 (11th Cir.1982); *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984); *Hornsby v. United States Postal Service,* 787 F.2d 87, 89 (3d Cir.1986). *But see Sims v. Heckler,* 725 F.2d 1143 (7th Cir.1984).

vate employers. *See e.g., Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.,* 702 F.2d 857, 859 (10th Cir.1983); *Rice v. New England College,* 676 F.2d 9, 10 (1st Cir.1982); *Gordon v. National Youth Work Alliance,* 675 F.2d 356, (D.C. Cir.1982). Indeed, the Supreme Court in *Zipes* had rested its treatment of § 2000e–5(e) in part on its having previously treated § 2000e–5(f)(1)'s time limit as non-jurisdictional in *Mohasco Corp. v. Silver,* 447 U.S. 807, 811 n. 9, 100 S.Ct. 2486, 2490 n. 9, 65 L.Ed.2d 532 (1980). *Zipes,* 455 U.S. at 398, 102 S.Ct. at 1135.

Although closely analogous, the question before us today differs from those resolved in *Zipes* and *Gordon.* The time limit in question governs the filing of Title VII claims *against the government.* Extension of equitable tolling to such claims is not automatic by any means, for the government enjoys sovereign immunity, and waivers of such immunity are narrowly read. *United States v. Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

In a slightly different context, however, we extended *Zipes* to claims against the government. In *Saltz v. Lehman,* 672 F.2d 207 (D.C. Cir.1982), we found that the *EEOC*'s 30–day time limit (29 C.F.R. § 1613.214(a)(1) (1987)) for bringing Title VII complaints to the attention of the agency Equal Employment Opportunity Counselor ("EEO Counselor") was subject to equitable tolling.[6] After recognizing and resolving the concern that the time limit was jurisdictional, the court rejected equitable tolling on the specific facts of the case. Since dismissal without any reference to those facts would have been appropriate if the untimeliness were jurisdiction-

al, and a court is responsible to determine its own jurisdiction regardless of the parties' views, *Saltz* represents a holding on the jurisdictional point even though the defendant conceded that the rule was subject to equitable tolling. *Id.* at 208–09. *See also Jarrell v. United States Postal Service,* 753 F.2d 1088, 1091 (D.C. Cir.1985) (reading *Saltz* to hold that the EEOC's 30–day rule was subject to equitable tolling, and remanding for application of the doctrine); *cf. Kizas v. Webster,* 707 F.2d 524, 545 (D.C. Cir.1983) (similar reading of *Saltz* in dictum).

Although the language in *Saltz* is broad enough to encompass all time limits for all Title VII suits where the government is the employer, *e.g., Saltz,* 672 F.2d at 209 ("Title VII's time requirements are subject to equitable modification"), the case does not explicitly address the time limit here in question—the one established by 42 U.S.C. § 2000e–16(c). The present case might be distinguished from *Saltz* on the basis of differences in either (1) the language and structure of the controlling provisions (42 U.S.C. § 2000e–16(c) and 29 C.F.R. § 1613.214(a)(1)), or (2) the status of the provisions (here a statute, in *Saltz* a mere agency regulation). We conclude that neither distinction is compelling.

Courts have taken exceptionally emphatic language as a sign of legislative intent that a time limit should be jurisdictional. For example, in *King v. Dole,* 782 F.2d 274, 276 (D.C. Cir.1986), this court relied on the "clear and emphatic" character of 5 U.S.C. § 7703(b)(2)—"[n]otwithstanding any other provision of law, any such case filed ... must be filed within 30 days...." Compared with the phraseology considered in *Saltz* ("[t]he agency may accept the complaint for processing in accordance with this subpart only if [the aggrieved employ-

**6.** 42 U.S.C. § 2000e–16 contemplates the invocation of administrative remedies as a condition precedent to suits in the federal courts. *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). The statute itself is silent as to the time period within which an aggrieved employee is to file her initial administrative charge. However, the Civil Service Commission promulgated 29 C.F.R. § 1613.214(a)(1) (1987), formerly 5 C.F.R.

§ 713.214(a)(1) (1978), which requires employees to bring charges to the attention of an EEO Counselor within 30 days of alleged discriminatory conduct. Federal government equal employment opportunity enforcement was later transferred to the EEOC by the President, pursuant to 5 U.S.C. §§ 901 *et seq.* (1982), in Section 3 of Reorganization Plan No. 1 of 1978, 43 Fed. Reg. 19,807, 92 Stat. 3781, reprinted as an attachment to 42 U.S.C. § 2000e–4 (1982).

ee] brought [it] to the attention [of the EEO Counselor] within 30 calendar days ...") or *Zipes* ("[a] charge under this provision shall be filed within [one hundred and eighty] days after the alleged unlawful employment practice occurred"), the words of 42 U.S.C. § 2000e–16(c) certainly have no special ring: "Within thirty days of receipt of notice of final action ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint ... may file a civil action as provided in section 2000e–5 of this title...."

Moreover, 42 U.S.C. § 2000e–16(d) states that the provisions of §§ 2000e–5(f)-(k) (which define the jurisdiction of the district court, provide for appeals, attorneys' fees, etc., in actions against private employers) govern Title VII actions against federal government employers. This structural point is relevant for two reasons. First, the Court in *Zipes* found significance in the time limit's being placed in a provision *separate* from the sections governing jurisdiction, *see* p. 1054 *supra*, and the structure is similar here. Second, the cross-reference from § 2000e–16(d) to § 2000e–5(f)–(k) suggests a parallelism between § 2000e–16(c) and § 2000e–5(e); the latter is what the Court held non-jurisdictional in *Zipes*. Thus, the statutory language and structure do not suggest that § 2000e–16(c) is any more jurisdictional than § 2000e–5(e) or 29 C.F.R. § 1613.214(a)(1).

Nor does the difference between statute and regulation seem controlling. Most of the courts that have discussed whether the time limits in Title VII actions against the government are jurisdictional have not distinguished between 42 U.S.C. § 2000e–16(c) and 5 C.F.R. § 1613.214(a)(4).[7] *Cooper v. Bell*, 628 F.2d 1208 (9th Cir.1980), is the only case in which a court has differentiated between the two for the purpose of deciding an equitable tolling issue. Although binding Ninth Circuit precedent held § 2000e–16(c)'s time limit to be jurisdictional, *Mahroom v. Hook*, 563 F.2d 1369, 1374 (9th Cir.1977), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978), the panel in *Cooper v. Bell* found 5 C.F.R. § 1613.214(a)(4) to be subject to equitable extension. The court noted that although § 2000e–16(c) required exhaustion of administrative remedies, and 42 U.S.C. § 2000e–16(b) authorized the Civil Service Commission to promulgate regulations to effectuate the statute's policies, "Congress did not premise district court jurisdiction" on timely filing of an administrative complaint. The time limit was solely the creature of the Civil Service Commission— "merely an administrative procedural requirement." 628 F.2d at 1213.[8]

The only other court to expressly consider whether the regulatory status of 29 C.F.R. § 1613.214(a)(1) might justify special treatment has rejected that notion. In *Sims v. Heckler*, 725 F.2d 1143 (7th Cir. 1984), the court, viewing § 2000e–16(c)'s time limit as jurisdictional in light of the federal government's sovereign immunity,

---

7. *See, e.g., Stuckett v. United States Postal Service*, 469 U.S. 898, 105 S.Ct. 274, 83 L.Ed.2d 210 (1984) (White, J., and Rehnquist, J., dissenting from denial of petition for *writ of certiorari*); *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984); *see also Hewlett v. Russo*, 649 F.Supp. 457, 459 (E.D.Va.1986) (recognizing that past cases have decided both the administrative and district court time limit questions, but according no significance to the difference in contexts).

8. The *Cooper v. Bell*, court also offered two justifications, apart from its mere regulatory character, for treating 29 C.F.R. § 1613.412(a)(1) as subject to equitable tolling. First, it pointed to the existence of express provisions for tolling in specific circumstances. 628 F.2d at 1213. While courts undoubtedly often infer a general policy from specific provisions, they as often apply the maxim *expressio* *unius est exclusio alterius.* (The two approaches suggest a paraphrase of Newton's third law of motion: "For every maxim there is an equal and opposite maxim." *Cf.* Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand.L.Rev. 395, 401–06 (1950); *see especially id.* at 405 & nn. 41–42.) Standing alone, the point seems only a weak distinction between the statute and the regulation.

The court also argued that the need for equitable tolling was strongest at the earliest stage of proceedings, when the claimant will be less schooled in the administrative byways and less articulate about the claim. *Id.* at 1213 & n. 10. We think the distinction significant, but militating more in favor of adjusting the burden for establishment of equitable tolling than of barring it altogether at the stage of court filing.

extended that view to the EEOC's regulatory time limit. It reasoned that "[v]alid administrative rules legislative in nature have 'the force and effect of law,'" *id.* at 1146 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979)), and concluded that 5 C.F.R. § 1613.214(a)(4) was "'as binding on the courts as any statute enacted by Congress,'" 725 F.2d at 1146 (quoting *Production Tool v. Employment & Training Administration*, 688 F.2d 1161 (7th Cir.1982)). Although we disagree with *Sim*'s apparent view that § 2000e–16(c) is jurisdictional, we agree that 29 C.F.R. § 1613.214(a)(1)'s regulatory status is not a critical support for its being subject to equitable tolling. It is clear that in holding 29 C.F.R. § 1613.214(a)(4) subject to equitable estoppel in *Saltz v. Lehman*, this court did not distinguish it from other statutory Title VII time restrictions. It in no way relied upon the fact that the time limit was promulgated by an agency rather than by Congress. We are not persuaded that we should introduce such a distinction at this point.

In finding the Title VII filing limit nonjurisdictional, we do not suggest, of course, that it may be disregarded with impunity. The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances. The Supreme Court has suggested in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), that courts may properly allow tolling where "a claimant has received inadequate notice, ... where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, ... where the court has led the plaintiff to believe that she had done everything required of her, ... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." *Id.* at 151, 104 S.Ct. at 1725–26 (citations omitted). We think the present case justifies application of equity without in any way bending those principles.

## II. APPLICATION OF EQUITY

As noted above, a mistake in naming Colonel Sweeney as defendant would not have subjected Mondy's claim to the bar of § 2000e–16(c) if he had straightforwardly pursued his error through the procedures of service. (*Cf.* "The road of excess leads to the palace of wisdom." W. Blake.) Instead he allowed service to be made by the district court, as 28 U.S.C. § 1915 entitled him to do. The caption of the complaint made it clear that he was suing a federal officer. If the marshal's office had simply followed the path laid out by Rule 4(d) within six days of Mondy's filing, Mondy would have been entitled to relation back under Rule 15(c). While the equities may not weigh in favor of a plaintiff who counts on "same day service," *Conforte v. Commissioner of Internal Revenue*, 459 U.S. 1309, 1311, 103 S.Ct. 663, 664, 74 L.Ed.2d 588 (1983), Mondy's behavior did not set up any such photo-finish. The Army does not assert that it has been disadvantaged by its belated notice of appellant's claim. In these circumstances, fairness demands that the statutory time limit be tolled.

We note that the Seventh Circuit, which treats the 30–day deadline as a jurisdictional prerequisite, recently held that the time limit was tolled during the pendency of a petition to proceed *in forma pauperis. Paulk v. United States*, 830 F.2d 79, 83 (7th Cir.1987).

\*  \*  \*  \*  \*  \*

Mondy should thus be deemed to have made timely service on the United States and to have satisfied the requirements of Rule 15(c). The decision of the lower court is reversed and the case remanded for further consideration.

MacKINNON, Senior Circuit Judge, concurring:

The majority opinion reaches a result in which I concur, i.e., that Mondy can continue with his Title VII suit, but I would premise that conclusion upon a different analysis of the *complete* statute. The statute authorizes an employee aggrieved by discrimination to bring a civil action in

which the "head of the department, agency, or *unit*, as appropriate, *shall* be the defendant" (emphasis added). 42 U.S.C. § 2000e–16(c). Against this plain language, the majority opinion "proceed[s] on the [erroneous] assumption that Mondy erred in naming Colonel Sweeney" because he ought to have named the Secretary of the Army, i.e., that the "head of the *department*" was the *only* appropriate defendant. Maj. Op. at 1052 n. 1. The majority opinion claims that it does "not reach or purport to decide the question of who may be a proper Title VII defendant ...," (*id.*), but its opinion in effect contradicts that assertion.[1] A large part of the majority's discussion would be unnecessary if its opinion were not underlain with the assumption that Colonel Sweeney was not an appropriate Title VII defendant because he was not a head of a *department.*

Appellant, William M. Mondy, a black civilian Army employee, brings this Title VII action claiming racial discrimination and retaliatory discharge. Mondy was a histopathology technician at the United States Army "Institute for Dental Research" at the Walter Reed Army Medical Center. On his claim of discrimination Mondy was given a "right-to-sue" letter and had until October 24, 1985 to file a civil action, pursuant to the thirty day statute of limitations for Title VII actions against the government. 42 U.S.C. § 2000e–16(c). Acting timely on October 18, 1985, six days prior to the deadline, Mondy *filed* with the Clerk of Court a *pro se* complaint based on diversity of citizenship, 28 U.S.C. § 1332, naming as defendant the officer who had signed his discharge letter, "Col. Thomas Sweeney" of the "United States Army Institute of Dental Research." (J.A. 13.) This *"commenced"* the civil action. Fed. R.Civ.P. 3 (emphasis added).[2]

On October 23, 1985, the court granted Mondy leave to proceed *in forma pauperis.* At the same time, the court, *sua sponte*, without prior notice to Mondy or service on the defendant, dismissed the complaint for a claimed lack of jurisdiction, erroneously concluding that Mondy had not exhausted his administrative remedies.[3] Acting swiftly, on November 5, 1985 Mondy filed a *pro se* motion to alter the judgment, attaching a copy of his right-to-sue letter. This led the court to reinstate the case on February 10, 1986. Shortly thereafter Mondy engaged an attorney who filed an amended complaint substituting the Secretary of the Army as defendant. How-

---

1. In specific contradiction of the majority's assertion that it does not reach the proper defendant issue, its opinion states that a "procedural defect in the bringing of the suit" was that "Mondy's complaint named the *wrong defendant*—his activity commander, Colonel Thomas Sweeney, rather than the Secretary of the Army." Maj.Op. at 1052 (emphasis added). *See also id.* at 1054 (referring to designating Colonel Sweeney as "Mondy's *error*") (emphasis added); *id.* at 1053, 1054 (the majority opinion asserts, "Mondy may have *mistakenly believed* that Colonel Sweeney was the proper Title VII defendant ..." and also refers to such designation as "His *mistaken choice* of defendant" and as "the *original error* ...") (emphasis added); *id.* at 1057 (characterizing the designation of defendant as "*a mistake* in naming Colonel Sweeney ...") (emphasis added). I am not willing to let the majority's erroneous assumption creep into decisional law when, in my opinion, it directly violates the plain language of the statute. There is absolutely no interpretation of this statute that would restrict the appropriate defendants to the *heads* of departments.

2. Receipt by the clerk's office of a *pro se* complaint accompanied by an *in forma pauperis* application constitutes a filing for statutory time limitation purposes. *See e.g., Rodgers v. Bowen,* 790 F.2d 1550, 1552 (11th Cir.1986); *Lyons v. Goodson,* 787 F.2d 411, 412 (8th Cir.1986); *Rosenberg v. Martin,* 478 F.2d 520, 522 n. 1a (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Smith v. Ouzts,* 629 F.Supp. 1001 (S.D.Miss.1986).

3. The court's dismissal of Mondy's original complaint was clearly erroneous for two reasons. First, failure to exhaust administrative remedies is an affirmative defense, and therefore Mondy was not required to anticipate it in his complaint. *See Brown v. Marsh,* 777 F.2d 8, 13 (D.C.Cir.1985) (plaintiff does not have the burden of proving exhaustion). Second, the case should not have been dismissed on a procedural defense ground such as exhaustion while the case was in the screening phase to determine if it was frivolous or malicious pursuant to 28 U.S.C. § 1915(c). *See e.g., Anger v. Revco Drug Co.,* 791 F.2d 956, 958 (D.C.Cir.1986) ("a *pro se* complaint may not be dismissed on its face under 28 U.S.C. § 1915(d) solely on the ground that the court lacks personal jurisdiction over the defendants.").

ever, the district court dismissed the amended complaint for lack of subject matter jurisdiction, ruling that the amended complaint substituting the Secretary of the Army as the defendant could not relate back because the Secretary had not been timely served. *Mondy v. Secretary of the Army,* slip op. No. 85–3439 (D.D.C. Oct. 31, 1986) [Available on WESTLAW, 1986 WL 15320]. This ruling implicitly holds that Colonel Sweeney was not an "appropriate" defendant under the Act.

Many cases hold that the head of a "unit" may be an "appropriate" defendant for Title VII purposes. *See e.g., Hackley v. Roudebush,* 520 F.2d 108, 115 n. 17 (D.C. Cir.1975); *Quillen v. United States Postal Service,* 564 F.Supp. 314, 321 (E.D. Mich. 1983); *Guilday v. Department of Justice,* 451 F.Supp. 717, 726 (D.Del.1978). *Guilday* holds that the head of the Immigration and Naturalization Service ("INS") is a more appropriate defendant than the Department of Justice, the INS, and individual INS employees, explaining that "[t]he wording of *Title VII leaves the Court considerable discretion* to decide which defendant is the 'appropriate' one. Some courts have concluded that the Cabinet Department head is the proper defendant, while others have held that the head of the agency or unit within a Cabinet Department is the proper defendant" (citations omitted) (emphasis added). In *I.M.A.G.E. v. Bailar,* 78 F.R.D. 549, 552–53 (N.D. Cal. 1978), against the Postal Service, the court allows "inclusion of defendants lower in the chain of command ... who accordingly have more knowledge and actual control of actions affecting those plaintiffs ... [w]here, as here, responsibility for the acts complained of has not yet been determined and ... it would appear premature to dismiss as defendants those persons who may ultimately prove to be the parties best able to grant the relief sought." *Beasley v. Griffin,* 427 F.Supp. 801, 803 (D. Mass. 1977) is to the same effect, holding that since each of the defendants "may be described as a 'head' of the department, agency or unit in question ... I see no persuasive reason to dismiss the complaint as against any of them."

The assumption that *only* the head of the Department, i.e., the Secretary of the Army, may be named as the defendant and that the head of Mondy's "unit" may *not* be properly named, reflects an unduly restrictive construction of the statute and violates the clearly expressed intent of Congress. To properly interpret a statute, *all* of its provisions are to be considered. It is an established rule of statutory construction that courts must give effect to *entire* statutes, not just select provisions or words. *Bowsher v. Merck & Co.,* 460 U.S. 824, 833, 103 S.Ct. 1587, 1593, 75 L.Ed. 2d 580 (1982).

In my opinion, *Guilday v. Department of Justice,* 451 F.Supp. 717, 726 (D.Del. 1978), and *I.M.A.G.E. v. Bailar,* 78 F.R.D. 549, 552–53 (N.D. Cal.1978), correctly interpret the jurisdictional defendant provision of Title VII. In enacting the Civil Rights Act, Congress did not intend to have claims of discrimination dismissed on a highly technical construction of the broadly worded provision designating appropriate defendants. In providing that "the head of ... a unit, *as appropriate, shall* be the defendant," (emphasis added), Congress indicated that a non-technical, reasonable interpretation should be applied in determining eligible defendants. The use of the words *"as appropriate"* and *"shall"* denote a congressional intent to prescribe a wide selection of jurisdictional defendants. It is this *complete* statutory provision that determines the jurisdictional defendants and the words should be given their ordinary everyday meaning. *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975).

Underlying the government's argument and the majority opinion is the assumption that Mondy's failure to name the *proper defendant* in his original complaint justified the dismissal of his complaint. If the court had not erroneously dismissed Mondy's complaint, however, the Marshal would have served the United States Attorney before the end of the statute of limitations period. Once the court rectified its error, Mondy's complaint was able to proceed through normal channels, and the

**1060**

Marshal had no difficulty discerning that Mondy's case required serving the United States Attorney.

An *in forma pauperis* plaintiff is powerless to serve process in his own action. Congress has provided that "the officers of the court [marshals] shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases." 28 U.S.C. § 1915(c). Similarly, Rule 4(c)(2)(B)(i) of the Federal Rules of Civil Procedure provides, "A summons and complaint shall, at the request of the party seeking service or such party's attorney, be served by a United States Marshal ... on behalf of a party authorized to proceed in forma pauperis pursuant to title 28, U.S.C. § 1915...." Mondy filed his complaint and *in forma pauperis* motion with the court well before the limitation period had run, and he was legitimately entitled to expect that the timely filed complaint would be deemed timely served. The Marshal should have served the United States Attorney, who was close by, at least as early as October 23, 1985, the date that the Judge granted Mondy *in forma pauperis* status. Several cases have recognized the special circumstance of *in forma pauperis* plaintiffs who must rely on the Marshal to serve process. *See, e.g., Rochon v. Dawson,* 828 F.2d 1107 (5th Cir.1987); *Paulk v. Department of the Air Force,* 830 F.2d 79, 83 (7th Cir.1987); *Romandette v. Weetabix, Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986).

To my mind Mondy appropriately named Colonel Sweeney as the defendant in his timely complaint, and therefore no amended complaint changing the name of the defendant was required, though nothing adverse results from continuing the action on that basis. The two mistakes made in this case were not made by Mondy. The first error was made when the court erroneously ordered the *sua sponte* dismissal of Mondy's complaint due to its mistaken conclusion that he had failed to exhaust administrative remedies. The United States Marshal made the second error. As an *in forma pauperis* plaintiff, Mondy was entitled and required to rely on the Marshal to serve the defendant or the United States Attorney within the statutory time period. 28 U.S.C. § 1915(c). Instead of effecting service when the complaint was filed by delivery to the Clerk of Court, or when the Judge granted Mondy's *in forma pauperis* application, the Marshall waited until after the statutory time period to serve the United States Attorney. Under such circumstances the delay was tolled and the complaint as filed against Colonel Sweeney "commenced" the action against an appropriate defendant. That the forces of litigation later caused the Secretary to be substituted as defendant does not require reliance on the relation back doctrine.

I concur in the result reached by the majority that Mondy must be allowed to proceed with his case, but for the reasons set forth above I cannot join in the underlying assumptions that the majority applies in reaching that result.